**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BEASLEY MEDIA GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:23-cv-03614 |
| | : | |
| ANTHONY GARGANO, | : | |
| | : | |
| and | : | |
| | : | |
| BSN LIVE, INC. d/b/a ALLCITY NETWORK | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF BEASLEY MEDIA GROUP, LLC'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Beasley Media Group, LLC ("Beasley"), by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 65, and for the reasons stated in the accompanying Memorandum of Law and other supporting documents, respectfully requests that the Court enter a temporary restraining order and preliminary injunction against Defendant Anthony Gargano, only, providing for the relief sought in Beasley's proposed Order.

Dated: September 18, 2023              Respectfully submitted,

**FISHER & PHILLIPS LLP**

By: /s/ Andrew S. Gallinaro
     Andrew S. Gallinaro (PA #201326)
     Gabrielle Giombetti (PA #321118)
     100 N. 18th Street, 12th Floor
     Philadelphia, PA 19103
     Phone: 610.230.2132
     Email: agallinaro@fisherphillips.com
             ggiombetti@fisherphillips.com

and

Michael Elkon (*pro hac vice pending*)
1230 Peachtree Street, NE
Suite 3300
Atlanta, GA 30309
Phone: 404.231.1400
Email: melkon@fisherphillips.com

**ATTORNEYS FOR PLAINTIFF**

<u>CERTIFICATE OF SERVICE</u>

I, Andrew S. Gallinaro, hereby certify that on the date set forth below, I caused a true and

correct copy of the foregoing *Motion for Temporary Restraining Order and Preliminary*

*Injunction* to be served via electronic mail on the following counsel of record:

Scott M. Pollins
Pollins Law
303 W. Lancaster Ave., Ste. 1C,
Wayne, PA 19087
scott@pollinslaw.com
Counsel for Defendants


Date: <u>September 18, 2023</u>                                          <u>/s/ Andrew S. Gallinaro</u>
                                                                                              Andrew S. Gallinaro

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BEASLEY MEDIA GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:23-cv-03614 |
| | : | |
| ANTHONY GARGANO, | : | |
| | : | |
| and | : | |
| | : | |
| BSN LIVE, INC. d/b/a ALLCITY NETWORK | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF BEASLEY MEDIA GROUP, LLC'S MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendant Anthony Gargano ("Gargano") is a popular on-air personality with 97.5 The Fanatic, who is well known to the Philadelphia market for his sports commentary and coverage of the major sports teams in this region. (Complaint at ¶ 2). Gargano has worked for Plaintiff Beasley Media Group, LLC ("Beasley"), the owner and operator of 97.5 The Fanatic, in Philadelphia pursuant to an employment agreement since 2015, with a current term of employment set to expire on October 7, 2024. (*Id.*).

Under both his employment agreement and common law duty of loyalty, Gargano is prohibited from providing services to a competing business while he is employed by Beasley.[1] (Complaint at ¶ 3). Despite this clearly defined obligation not to compete with his current employer, Gargano notified Beasley on September 11, 2023 that he intends to do precisely that: Gargano advised Beasley that he plans to continue producing content for The Fanatic, but also that he has accepted employment with Defendant BSN Live, Inc. d/b/a ALLCITY Network ("All City"), a direct and emerging competitor of Beasley in the Philadelphia market, where he will perform on podcasts, write articles, and likely create other forms of Philadelphia sports-focused content that will compete directly with content offered by Beasley. (*Id.*). In other words, Gargano intends to work simultaneously for two competing businesses to provide sports coverage and commentary to the Philadelphia marketplace, targeting the same audience and competing for the same local advertisers on each platform. (*Id.*).

Less than twenty-four hours after Gargano provided such notice, All City blitzed the Philadelphia market with press releases announcing the launch of its newest media platform—PHLY Sports—a "hyperlocal" sports coverage network focused on the Philadelphia sports scene.

---

[1] Gargano's employment agreement further prohibits him from performing certain competitive tasks within the Philadelphia region for six months following his separation from the company.

(Complaint at ¶ 4).  The announcement introduced the current line-up of content creators, including at least one former Beasley employee who recently resigned in violation of his employment agreement and who is still subject to a non-competition agreement with Beasley.  All City's media blitz also placed considerable emphasis on a press release announcing that Gargano would be "coming soon" to the platform.  (*Id.*).  Disturbingly, All City's CEO has since claimed in the press that Gargano has been involved with the launch of PHLY Sports "since its inception" and that he has been instrumental in the creation of a competing media platform that is actively poaching Beasley's employees.  (*Id.*).

Beasley has already suffered harm in the form of lost advertisements because of Gargano's conduct and All City's tortious interference with Beasley's contractual relationships.  Thus, Beasley initiated this action against Gargano and All City seeking damages and injunctive relief.  Because Beasley will continue to suffer irreparable harm if Gargano continues to breach his contractual obligations, including to its goodwill, reputation, market position, business operations, confidential information, and the benefit of its bargain in developing and utilizing Gargano's unique and extraordinary skills, Beasley brings this action to obtain temporary and preliminary injunctive relief to enforce the terms of Gargano's employment agreement against Gargano and anyone acting in active concert with him.

## II.      STATEMENT OF FACTS

### A.  Beasley and All City Are Direct Competitors

Beasley is a multiplatform media company providing advertising and digital marketing solutions across the United States.  (Complaint at ¶ 11).  The Company owns sixty-one radio properties located in fourteen large and medium markets across the country.  (*Id.*).  Beasley also

offers capabilities in audio technology, esports, podcasting, ecommerce and events. (*Id.*). Beasley's platforms reach more than 20 million consumers nationwide on a weekly basis. (*Id.*).

One of the platforms that Beasley owns and operates is "97.5 The Fanatic." (Complaint at ¶ 12). The Fanatic is a Philadelphia-based multimedia platform that produces terrestrial radio shows, sports journalism (both in print and on-air), internet streaming content, and podcasts. (*Id.*). The Fanatic also publishes content on all the major social media sites, including, YouTube, Facebook, Instagram, and X (formerly known as Twitter). (*Id.*). The material produced and published by The Fanatic focuses on the major sports teams in the Philadelphia region. (*Id.*).

All City is a Denver-based start-up company that owns and operates sports-focused multimedia platforms in several major cities, including Denver, Chicago, and Phoenix. (Complaint at ¶ 13). Each of All City's media platforms produce primarily web-based content, including podcasts, YouTube videos, and articles, covering the major sports teams affiliated within each region where it operates. (*Id.*). All City is in the process of a national expansion campaign and intends to compete with Beasley in several major cities, including Philadelphia and Boston, boasting of "a total of $8.3 million in venture capital mixed with angel investors." (*Id.*).

**B. Gargano's Employment and Contractual Agreements with Beasley**

Gargano is a current Beasley employee and one of the major on-air content creators for the Fanatic in Philadelphia. (Complaint at ¶ 14). Gargano is the host of "The Anthony Gargano Show," which broadcasts on 97.5 FM, weekdays from 10:00 a.m. to 2:00 p.m. (*Id.*). Gargano's show is also livestreamed on the Fanatic website (www.975thefanatic.com) as well as on Amazon, YouTube and several smart phone applications including the Fanatic App and Audacy. (*Id.*). Recorded segments and full episodes of the Anthony Gargano show are further edited and disseminated as podcasts on the Fanatic website as well as on all major podcast providers,

including YouTube, Apple, and Spotify. (*Id.*). Gargano is one of The Fanatic's top talents and is highly compensated for his work on behalf of Beasley. (*Id.* at ¶ 15). In addition to his salary, Gargano has the ability to earn, and has earned, significant endorsement fees from third parties who desire to advertise through his show on the Fanatic, by paying for Gargano to make appearances at events, or to broadcast the Anthony Gargano Show live from their business location. (*Id.*). Beasley expended substantial time and money to boost Gargano's profile throughout the Philadelphia market, giving him a platform from which to build an audience and advertising his show heavily in multiple media outlets. (*Id.* at ¶ 16).

Gargano is employed pursuant to an Employment Agreement dated October 8, 2021, which provides for a three-year term of employment ending on October 7, 2024 (hereinafter, the "Agreement"). (Complaint at ¶ 17). A true and correct copy of the Agreement is filed under seal as "Exhibit A" to the Complaint. In addition to seeing his profile boosted substantially through Beasley's efforts to promote him, Gargano derived numerous benefits from the Agreement, including: (a) a three-year term of employment whereby he would receive substantial severance if terminated without cause; (b) a six-figure salary and the potential to earn five-figure bonuses on a quarterly basis; and (c) participation in Beasley's benefits plans. (*Id.* at ¶ 18).

Pursuant to the Agreement, Gargano agreed to perform services for Beasley as an "On-Air Mid-Day Host," which includes the following duties:

> prepare, present, and deliver Station audio, video and/or streaming programming including live and recorded music, news and/or talk, commercials, podcasts and other programming elements.
>
> […]
>
> Make public appearances which may be broadcast by Employer that promote and publicize Station or Employer or which aid Employer in selling of commercial time.

[…]

> Create and post daily programming content and promotional material on Station's website and on social networking sites as Employer shall reasonably require.
>
> Participate in podcasts, videos or any other media, promotions or sessions that Employer reasonably requests to promote Programs, Station and/or Employer.

(Complaint at ¶19 and Ex. A, ¶ 3).

Consistent with the description of his varied duties for Beasley, in addition to creating "The Anthony Gargano Show," Gargano also publishes articles for the Fanatic covering local and national sports stories that are hosted on the Fanatic website.[2]  (Complaint at ¶ 20).  Pursuant to his contractual obligations, Gargano also frequently posts content on social media promoting himself and The Fanatic.  (*Id.* at ¶ 21).  The Fanatic also publishes Gargano's show on YouTube. (*Id.*).  Beasley also utilizes Gargano's services in selling advertising packages to businesses in the Philadelphia region.  (*Id.* at ¶ 22).  For example, Parx Casino pays Beasley significant sums to advertise on the Anthony Gargano Show and for Gargano to make appearances at its casino and to perform his on-air show live at its facilities before an audience.  (*Id.*).  These types of engagement are part of Gargano's duties and obligations under his employment agreement with Beasley.  (*Id.*).

Several provisions of the Agreement dictate that Beasley is entitled to Gargano's exclusive efforts and undivided loyalty with respect to these duties and make clear that he is not permitted to perform similar services for others during the term of his employment. (Complaint at ¶ 23).  For example, the Agreement provides:

> **<u>EFFORTS OF EMPLOYEE</u>**.  Employee shall devote Employee's full time and best efforts and skill to the performance of Employee's

---

[2] For example, *see* https://975thefanatic.com/2023/09/06/joel-embiid-expresses-loyalty-to-sixers-amid-harden-drama/#; https://975thefanatic.com/2023/08/31/james-harden-wants-to-be-the-main-guy-on-a-team-again/.

FP 48198193.4

duties and the promotion and development of Employer's business. … Employee shall not, during the Term [of his employment], be or become involved or interested, directly or indirectly, in any manner, as a partner, officer, director, stockholder, advisor, inventor, creditor, employee or in any other capacity in Employer's Business … or allied trade…"

(Complaint at ¶ 24 and Ex. A., ¶ 4; *see also* ¶ 5 (requiring Employee's "full and faithful performance.")).  The Agreement further provides:

**NON-COMPETITION.** Employee is familiar with the business of Employer, the commercial and competitive nature of the broadcast industry, and the substantial commitment Employer makes in developing Employee as a personality… . Employee further recognizes that the value of Employers business would be injured if Employee obtained comparable employment within Station's market.  It is therefore agreed that, subject to the provisions hereinafter set forth, Employee agrees that during the term of this Agreement and for a period of six (6) months following the termination of employment (for (for any reason, including expiration of this Agreement) (the "Non-Competition Period"), to the extent enforceable under the laws of the state where Station is located, Employee shall not enter into the employ of, perform services for, or agree to perform services of the same or similar nature to those performed by Employee for Employer for an entity or person engaged in Employer's Business or allow the use of Employee's voice, appearance or likeness to be heard or seen live or by recording via a radio or television station within the Philadelphia, PA Nielsen audio market (the "Non-Competition Radius")….

"Employer's Business" means (i) the transmission, retransmission, or distribution of audio or video programming via terrestrial broadcast signal (analog or digital), wireless, Internet streaming, webcasting, podcasting, hard wire, satellite or any method now known or hereafter developed; (ii) the buying and selling of advertising on media platforms, (iii) internet streaming, (iv) website management and content creation and (v) content creation for distribution platforms, including but not limited to social networking sites, podcasting and mobile phones; (vi) esports; and (vii) programming and podcasts related to esports, gaming, entertainment, sports, news, technology and criticism.

(Complaint at ¶ 25 and Ex. A, ¶ 10(b)). Finally, the Agreement contains an explicit exclusivity provision making clear that Gargano may not perform services for, or allow the use of his name, likeness or voice by anyone engaged in a similar sports media business:

> **EXCLUSIVITY.** … Employee further agrees that, during the Term, Employee shall not, without Employer's prior written consent, permit the use of Employee's name, likeness, voice or endorsement by, or perform any service, including without limitation, on-air performance, writing or production duties, for any other person or business entity whatsoever, including without limitation, any person or entity engaged in Employer's Business…

(Complaint at ¶ 26 and Ex. A, ¶ 15).

Pursuant to each of the above provisions and based on the nature of Gargano's work for Beasley, which includes providing sports commentary and analysis that is broadcast on all forms of media, including digital media, Gargano is not permitted to provide sports-related content to a competing business in the Philadelphia Market. (Complaint at ¶ 27).

### C. All City Begins Soliciting Beasley's Employees as it Prepares to Launch a Philadelphia Platform

In mid-August 2023, Beasley learned that All City had approached and made offers of employment to several of its employees who are affiliated with 97.5 The Fanatic. (Complaint at ¶ 29). At or around that time, Gargano approached his station manager to propose an arrangement whereby he would continue producing content for Beasley and 97.5 The Fanatic, but also work to assist All City to establish a media presence in Philadelphia and to create sports-related content for All City. (*Id.* at ¶ 30). Gargano further suggested that Beasley should partner with All City and publish The Fanatic's show content on All City's platform. (*Id.*). Gargano did not disclose the specific terms of his proposed employment for All City. (*Id.*). Beasley declined Gargano's request to accept other employment and communicated that it was not interested in a partnership

that would involve assisting a media company establish a competing enterprise in Philadelphia. (*Id.* at ¶ 31).

At or around the same time, All City solicited several other Beasley employees with the intent of hiring them to produce content for its Philadelphia platform. (Complaint at ¶ 32). One such employee, Devon Givens, had an employment agreement with Beasley Dated April 1, 2022, which provided for a term of employment through March 31, 2025. (*Id.* at ¶ 33). Mr. Givens was the host of an evening radio show for 97.5 The Fanatic and further acted as a reporter covering local Philadelphia sports with an emphasis on basketball and the Philadelphia 76ers. (*Id.*). Similar to the Agreement, Mr. Givens' employment agreement did not permit him to accept other employment during his term with Beasley, and nothing in his agreement allowed him to resign prior to the expiration of his contract. (*Id.* at ¶ 34). Mr. Givens' agreement also contained a non-competition provision that precluded his ability to accept employment with a competitor in the Philadelphia region for three (3) months following the termination of his contract. (*Id.*). Nevertheless, on or about August 21, 2023, Mr. Givens notified Beasley that he had resigned and would no longer perform his evening radio show for the Fanatic. (*Id.* at ¶ 35). As a result of Mr. Givens' resignation, Beasley was required to shuffle its personnel to fill the time slot normally devoted to Mr. Givens. (*Id.* at ¶ 36). Beasley believes that Mr. Givens is currently working for All City in violation of his non-compete and the terms of his employment agreement with Beasley. (*Id.* at ¶ 38).

All City has solicited at least nine other Beasley employees working with 97.5 The Fanatic, including significant content creators, account executives and sales managers. (Complaint at ¶ 39). Once Beasley learned of All City's efforts to poach several of its employees, Beasley notified All City by letters dated August 16 and 25, 2023, that Beasley is aware of All City's course of

conduct, as well as warning All City to cease any further efforts to induce Beasley employees to breach their agreements with Beasley. (*Id.* at ¶ 40). At the time of those letters, Beasley was not aware of the full extent of All City's efforts to raid its workforce in Philadelphia. (*Id.*).

### D. All City Launches a Philadelphia Sports Network and Touts its Acquisition of Beasley Employees

On September 11, 2023, Gargano advised Beasley that he had accepted a position with All City and would begin his working relationship with All City the following day. (Complaint at ¶ 41). Gargano also stated that he wanted to continue to perform his duties for Beasley, and that he believed could do so without a conflict of interest. (*Id.*). As a result of Gargano's conduct, on September 12, 2023, Beasley notified Gargano that he was suspended until further notice. (*Id.* at ¶ 42). While he has been suspended, Gargano continues to be paid by Beasley and remains an employee expected to honor his contractual and legal duties to the company. (*Id.*).

On September 12, 2023, All City announced the official launch of "PHLY Sports," a multimedia platform focused exclusively on the Philadelphia marketplace, and the major professional and collegiate sports teams associated with this region. (Complaint at ¶ 43). As part of its announcement, All City published a video press release on the web and on multiple social media platforms announcing it will produce daily live shows and podcasts covering the Philadelphia sports scene. (*Id.* at ¶ 44). The video promises content from well-known Philadelphia sports commentators including Devon Givens. (*Id.* at ¶ 45). The lineup of content creators includes sports talk radio hosts, making clear that All City considers the listeners and fanbases of those individuals to be its target audience. (*Id.*). All City's press release trades explicitly on Mr. Givens' name and likeness, and further teases that Anthony Gargano would be "coming soon" to the platform, again using his name and likeness. (*Id.* at ¶¶ 46-47).

10

As of the filing of this action, PHLY Sports appears to be operating a website with both free and subscription-based content, which includes articles covering regional sports stories that are similar in nature to articles published on the Fanatic website. (Complaint at ¶ 48). PHLY Sports also announced that it will be producing and livestreaming separate daily podcasts on YouTube for each of the major professional sports franchises in Philadelphia, as well as for Penn State sports. (*Id.* at ¶ 49). While their names and images are being used to promote All City's PHLY Sports platform, as of the filing of this action it does not appear either Gargano or Givens have yet published content for All City. (*Id.* at ¶ 50). However, Beasley is not aware what work either may be doing for All City in preparation for future publications and broadcasts. (*Id.*).

Beasley believes that Gargano and other former Beasley employees have provided substantial assistance to All City in establishing PHLY Sports, including by soliciting existing Beasley employees to join PHLY Sports, in violation of the non-solicitation provisions of their respective employment agreements. (Complaint at ¶ 51). Beasley also has reason to believe that All City has compensated Gargano with an ownership interest in All City / PHLY Sports for his efforts in establishing and promoting the platform. (*Id.* at ¶ 52).

All City's co-founder and CEO, Brandon Spano, was interviewed by the Philadelphia Inquirer in connection with the launch of PHLY Sports and is reported to have said that "Gargano was involved with the new site from its inception, and the launch would not have been possible without him."[3] (*Id.* at ¶ 53). Spano is further quoted in the article as stating "[a]t the moment, we are trying to determine exactly what [Gargano's] involvement looks like as we navigate his contractual situation with the Beasley Media Group" … "What we can promise is that Anthony will be involved in many aspects of the network and at some point, fans will be able to watch him

---

[3] https://www.inquirer.com/sports/phly-sports-youtube-anthony-gargano-975-the-fanatic-allcities-network-20230912.html

and listen to him on PHLY."[4]  (*Id.*).  Mr. Spano is also quoted in an article published by the Sports Business Journal claiming that Gargano "helped assemble the talent and build the site" and that Mr. Spano "spent much of the summer in Philadelphia working with Gargano…"[5]  (*Id.* at ¶ 54). Thus, based on the statements by Mr. Spano, it appears that Gargano has been and is continuing to provide services to All City in advance of producing any public-facing content for PHLY Sports. (*Id.* at ¶ 55).  Beasley believes that All City has required it employees to sign employment agreements that contain non-competition provisions that preclude its employees from working for, *inter alia*, sports radio stations—making clear that All City understands it competes with media platforms that broadcast content on terrestrial radio.  (*Id.* at ¶ 56).

## III.    ARGUMENT

Gargano is blatantly and egregiously violating the terms of his valid and enforceable Agreement and should be immediately enjoined from doing so.  In determining whether to issue temporary and preliminary injunctive relief, a court must consider whether the party seeking the injunction has satisfied four factors: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010); *see also Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a temporary restraining order . . . is the same as that for issuing a preliminary injunction.").  As set forth below, consideration of the above factors tips decidedly in favor of Beasley.  Injunctive relief is both warranted and necessary to protect Beasley's legitimate business interests.

---

[4] *Id.*
[5] https://www.sportsbusinessjournal.com/Articles/2023/09/13/allcity-network-sports-media-philadelphia-anthony-gargano-future.aspx?hl=gargano&sc=0&publicationSource=search

### A. Beasley Is Likely To Succeed On The Merits Of Its Claims

To demonstrate a likelihood of success on the merits, Beasley does not need to show that it is more likely than not that it will succeed. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). Instead, all a plaintiff must show is "a likelihood of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief." *Id.* Beasley's likelihood of success on the merits is substantial. The Agreement and the restrictive covenants therein are enforceable and Gargano's planned employment with All City is a breach of not only his employment contract, but also his common law duty of loyalty. Thus, as described in further detail below, Beasley is likely to succeed on the merits of its claims.

#### 1. Beasley will prevail on its breach of contract claim

Beasley far exceeds the threshold requirement of demonstrating a reasonable chance of success on the merits of its breach of contract claim, as Beasley has shown that it has a valid, enforceable contractual agreement; that Gargano breached (and intends to continue to breach) his obligations owed to Beasley; and that Beasley has been harmed as a result. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (noting that there are three elements necessary to prevail on a claim for breach of contract under Pennsylvania law: "[(1)] the existence of a contract (including its essential terms), (2) a breach of duty imposed by the contract and (3) resultant damages.").

#### a. The Agreement is valid and enforceable

Since 2015, Gargano agreed to a series of employment contracts with Beasley, including his most recent Agreement, which runs through October 7, 2024. As an initial matter, because Gargano is still employed and because Beasley seeks to enforce the provisions of the Agreement that dictate that Beasley is entitled to Gargano's exclusive efforts and undivided loyalty *during the*

*term of his employment*, the Court need not analyze these terms of the Agreement under the more stringent review it would apply to post-employment restrictive covenants. *See PFB Members' Service Corporation v. Eckenroad*, No. 801 MDA 2019, 2020 WL 1951678, at *6 (Pa. Super. Ct. Apr. 23, 2020) (citing *Insulation Corp. of America v. Brobston*, 667 A.2d 729, 733-34 (Pa. Super Ct. 1995) ("***Post-employment*** restrictive covenants are subject to a more stringent test of reasonableness . . . This heightened scrutiny stems from a historical reluctance on the part of our courts to enforce any contracts in the restraint of free trade, ***particularly where they restrain an individual from earning a living at his trade***.") (emphasis added). The contract provisions at issue here simply memorialize what is already true under the common law – that during the term of employment, an employer is entitled to its employees' undivided loyalty. *See Maritrans v. Pepper Hamilton Sheetz*, 602 A.2d 1277, 1283 (Pa. 1922). Further, Beasley's requested relief would not restrain Gargano from earning a living. Quite the opposite, Gargano would be required to fulfill the terms of his contractual agreement with Beasley, through which Beasley is entitled to receive Gargano's exclusive service and undivided loyalty for the remainder of his employment term. As such, the Court should enforce the terms of the Agreement as written, without the need for the balancing of interests that applies in the post-employment context. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) ("Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone.") (citations and internal quotations omitted). The terms of the Agreement are clear and unambiguous, reasonable, and well within the range of covenants that have been enforced by this Court.

However, even if the Court were to apply a more stringent review, the Agreement is valid and enforceable. Post-employment restrictive covenants are enforceable in Pennsylvania when

14

"they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002).

Here, the Agreement was entered into as a condition of Gargano's most recent employment term with Beasley. In exchange for his contractual commitments, Gargano is highly compensated by Beasley and he has the ability to earn (and has earned) significant endorsement fees from third parties. Thus, the restrictive covenants in the Agreement are incident to Gargano's employment relationship with Beasley. *See Pulse Technologies, Inc. v. Notaro*, 67 A.3d 778, 781 (Pa. 2013) (holding that a noncompete agreement is supported by consideration and therefore enforceable when the restrictive covenant is contained within the employment agreement and is simultaneously executed with the taking of employment).

Further, the exclusivity and noncompete provisions in the Agreement are designed to protect Beasley's interests in its reputation and position in the market, its customer and employee goodwill, the continuity of its business operations, and its investment in Gargano's unique skills, all of which are recognized as legitimate business interests worthy of protection under Pennsylvania law. *See Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 920-21 (Pa. 2002) ("Generally, interests that can be protected through covenants include trade secrets, confidential information, good will [which includes reputation], and unique or extraordinary skills."); *WellSpan Health v. Bayliss*, 869 A.2d 990, 996 (Pa. Super. Ct. 2005) (noting that legitimate business interests protectable by noncompetes include client base, goodwill and investments in employees).

Finally, the limited temporal and geographic scope of Gargano's noncompete restrictions are eminently reasonable under the facts and prevailing law. Indeed, Gargano is prohibited only

15

from engaging in competitive employment within the Philadelphia Nielsen audio market during the term of his contract with Beasley, which runs through October 7, 2024, and for six months thereafter. Pennsylvania courts regularly enforce noncompete restrictions of significantly longer duration and similar geographic scope. *See, e.g.*, *Coventry First, LLC v. Ingrassia*, 2005 WL 1625042, at *8 (E.D. Pa. July 11, 2005) (enforcing 3-year restriction, on finding that Pennsylvania Supreme Court has often upheld 3-year covenants not to compete); *CertainTeed Ceilings Corp. v. Aiken*, No. 14-3925, 2014 WL 5461546, at *12 (E.D. Pa. Oct. 27, 2014) (enforcing noncompete in geographic territory actually covered by the former employee).

Not surprisingly, given the nature of the special and personal service involved, noncompete provisions are commonly found in broadcast performer contracts, and prohibitions against competitive employment for as long as two years have been routinely upheld in broadcast cases. *See, e.g.*, *Radio One, Inc. v. Wooten*, 452 F. Supp. 2d 754 (E.D. Mich. 2006) (enforcing 6-month, 75-mile noncompete against radio personality); *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1114 (Ind. Ct. App. 2003) (finding reasonable a 12-month restriction that prevented a former radio program host from being employed as an on-air personality at radio stations in the same city, but noting that the plaintiff radio station failed to demonstrate irreparable harm where the defendant was quickly replaced and the station did not lose any advertising); *New River Media Group, Inc. v. Knighton*, 429 S.E.2d 25 (Va. 1993) (enforcing a 1-year, 60 mile noncompete against morning disc jockey); *Cullman Broadcasting Co. v. Bosley*, 373 So.2d 830 (Ala. 1979) (noting unique nature of broadcasting business as factor in enforcing a 1-year, same county, noncompete provision against a radio disc jockey).

Here, enforcing Gargano's contractual obligations serves legitimate protectable interests and the restraints at issue are reasonable, fair, and indisputably incidental to the employment

relationship that exists between the parties.  Thus, Beasley has a more than reasonable likelihood of success in proving the existence of a valid and enforceable contract.

### b.  *Gargano breached his contractual obligations*

Gargano has already notified Beasley that he accepted employment with All City, a direct competitor in the Philadelphia market.  Further, All City's CEO has stated publicly that Gargano has been involved in the launch of PHLY Sports from its inception.  Gargano ostensibly takes the position that he is not in breach because All City is not a hard wire broadcast radio station, but rather a digital streaming service.  This argument is akin to making the absurd claim that because Amazon.com does not operate many brick-and-mortar store locations, it does not compete with Target and Walmart.[6]  As set forth at length above, both Beasley and All City are media companies that produce content available across multiple platforms, including online (both through their web sites and YouTube), podcasts, social media, and through multiple smartphone applications.  Importantly, Gargano's proposed role with PHLY Sports places him in a position where he will create sports-related content covering the major sports teams in Philadelphia, which is exactly what he does in his role at Beasley, and that content will be distributed through many of the same channels that Beasley uses.

Moreover, advertisers—which are the major source of revenue for both companies—who desire to have Gargano endorse their products or services, or to advertise to his audience, will now have a choice between PHLY Sports and The Fanatic.  As it is unlikely that Philadelphia-based businesses are going to double their ad spend to advertise with both PHLY Sports and The Fanatic, Gargano's employment by All City creates a substantial risk that he will draw advertisers away

---

[6] In fact, Amazon and Target have engaged in trade secret litigation in which Amazon alleged that they are indeed competitors.  https://www.reuters.com/article/us-amazon-lawsuit/amazon-sues-former-employee-over-new-job-at-target-idUSKCN0WO2IJ

from Beasley. Thus, there can be no real argument that All City and Beasley are direct competitors, and that Gargano is in breach of his contractual obligations to Beasley. Indeed, All City concedes as much in that they have non-compete restrictions in place with their employees that prevent those employees from working for radio stations.

### c. Beasley has suffered damages as a result of Gargano's breach

Beasley has already suffered damages as a result of Gargano's breach, and it stands to suffer significant further damage if Gargano is permitted to continue breaching his contractual obligations. Indeed, at least one of Beasley's advertisers has cancelled a $10,000 endorsement deal featuring Gargano because of the uncertainty surrounding Gargano's employment. Beasley is justifiably concerned that it will lose additional advertiser and endorsement contracts as a result of Gargano's breach. Moreover, Beasley is actively suffering damage to its business operations as it scrambles to find coverage and rearrange its programming to account for Gargano's paid suspension in light of his decision to begin a working relationship with All City in violation of his Agreement. Indeed, the whole point of the three-year term in the Agreement is to give Gargano peace of mind that he will have stable employment and Beasley peace of mind that it will not be left high and dry without coverage in one of its most important time slots.

### 2. Beasley will prevail on its breach of duty of loyalty claim

Beasley is also more than likely to succeed on the merits of its breach of duty of loyalty claim against Gargano. It is black-letter law in Pennsylvania that during the term of employment, an employer is entitled to its employees' undivided loyalty. *See Maritrans*, 602 A.2d at 1283. Further, the duty of loyalty is implied in every employer-employee relationship, *Smith v. Unemployment Comp. Bd. Of Review,* 367 A.2d 811, 813 (Pa. Cmwlth. Ct. 1977). In order to uphold his duty of loyalty, "[a]n employee must provide his employer with undivided loyalty and

avoid conflicts of interest." *Martians,* 602 A.2d at 1283. An employee must also "refrain from competing with the principal and from taking action on behalf of, or otherwise assisting, the principal's competitors throughout the duration of the agency relationship" and to refrain from using "property or confidential information of the principal for the agent's own purpose or those of a third party." *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 678 (E.D. Pa. 2018) (citing *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014)). Stated differently, "[n]o man can serve two masters." *SHV Coal, Inc. v. Continental Grain Co.,* 545 A.2d 91 (Pa. Super. Ct. 1988), *rev'd on other grounds*, 526 Pa. 489, 587 A.2d 702 (1991).

To prevail on a claim of a breach of fiduciary duty under Pennsylvania law, the plaintiff must establish that "'(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit ... was a real factor in bring[ing] about plaintiffs injuries.'" *Synthes*, 25 F. Supp. 3d at 667 (quoting *McDermott v. Party City Corp.*, 11 F.Supp.2d 612, 626 n. 18 (E.D. Pa. 1998)).

Beasley has compelling evidence that Gargano intentionally breached his duty of loyalty by providing substantial assistance to All City in establishing a media presence in Philadelphia, including by soliciting existing Beasley employees to join PHLY Sports, and by creating sports-related content for All City—all while he is still employed by Beasley. Gargano's conduct in this regard presents the very essence of a claim for breach of loyalty. *See Adesanya v. Novartis Pharmaceuticals Corp.*, 766 Fed. Appx. 154, 159 (3d Cir. 2018) (finding employee breached duty of loyalty when she worked simultaneously for another pharmaceutical company in violation of her employee agreement). Further, as set forth above, Beasley has already suffered damages in the form of cancelled endorsement deals directly linked to Gargano's conduct. Thus, Beasley has

demonstrated a sufficient likelihood of prevailing on the merits of its breach of duty of loyalty claim. Additionally, injunctive relief is available for a breach of fiduciary duties. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1287-88 (Pa. 1992) ("a fiduciary who breaches his duty of loyalty to his principal is liable to his principle [sic], and an injunction is a proper remedy for the breach").

### B. Beasley Will Suffer Irreparable Harm Without Injunctive Relief

Beasley faces immediate and irreparable harm if Gargano is not enjoined from breaching his contractual obligations and violating his duty of loyalty.

Irreparable harm is harm that "cannot be adequately compensated in damages, either because the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages." *National Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 710, 709 (E.D. Pa. April 21, 1998). Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187,195 (3d Cir. 1990) (citing *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987)). This Court has recognized that "the loss of future business opportunities, client goodwill and an employer's reputation, along with the loss sustained by the misuse of confidential information, is particularly difficult to quantify – and perhaps even harder to undo." *Mallet & Co. Inc. v. Lacayo*, No. 19-1409, 2020 WL 6866386 at *11 (E.D. Pa. Nov. 23, 2020); *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 805 (3d. Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.").

Here, enforcement of Gargano's contractual obligations is necessary to prevent further harm to Beasley's reputation, goodwill, and business opportunities, as well as to protect against disclosure of Beasley's confidential information. Beasley has invested heavily in building and

20

sustaining 97.5 The Fanatic's reputation and leading position in the market. Beasley has further invested years of time and resources in developing Gargano as an on-air talent. Gargano is uniquely well-known and well-liked by Philadelphia sports enthusiasts. Because Gargano broadcasts exclusively for Beasley in the Philadelphia region, his name is closely associated with The Fanatic, and he brings revenue to the station through advertisers looking to gain his endorsement and to place their ads before his viewership. The dilution of Gargano's association with The Fanatic is a significant concern to Beasley and one they specifically guarded against by requiring the exclusivity of Gargano's services in the Agreement. The potential harm to Beasley's goodwill and reputation associated with Gargano's breach is difficult to quantify with any certainty. Gargano specifically acknowledged this in his Agreement, when he recognized that "the services to be rendered by [Gargano] are of a special, unique, and unusual character involving special talent and providing peculiar value, the loss of which cannot be adequately compensated for in damages." Complaint, Ex. A, ¶ 18(h). Gargano further authorized Beasley to obtain equitable relief in the event of breach. *Id.* Thus, Beasley has established the likelihood of irreparable harm with no adequate remedy at law in the absence of an injunction. *See Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 479 (E.D. Pa. 2007) (finding irreparable harm based in part on a stipulation in the restrictive covenant that "in the event of a breach or threatened breach . . . Quaker will suffer irreparable harm and monetary damages may not be an adequate remedy.").

## C. The Balance of the Equities and the Public Interest Favor Beasley

The harm to Beasley that will inevitably occur if the Court denies its request for injunctive relief far outweighs any harm that will occur if the relief is granted. An injunction in this case would prohibit Gargano from working for All City, but he would continue to be employed by Beasley under the same terms and conditions that he previously negotiated in the Agreement. Thus,

Gargano will not be precluded from earning a living in his chosen profession, he will simply not be permitted to breach his contractual obligations in order to work for two competitors, simultaneously. An injunction would simply preserve the status quo, a state of affairs in which Gargano works as a sports media personality for Beasley and not for All City. The balance of the equities weighs in favor of granting injunctive relief.

Finally, the public interest is served by an injunction. Pennsylvania courts have consistently held that the enforcement of reasonable restrictive covenants protects legitimate business interests and therefore serves the public interest. *See, e.g.*, *Siemens Bldg. Tech., Inc. v. Camacho*, 168 F. Supp. 2d 425, 427 (E.D. Pa. 2001) (holding that it is in the public interest to protect legitimate business interests); *Hillard v. Medtronic, Inc.*, 910 F. Supp. 173, 179 (M.D. Pa. 1995) ("[t]he public interest is served by protecting legitimate business interests."). Thus, an injunction is necessary and appropriate not only to prevent harm to Beasley, but also to serve Pennsylvania's policy of enforcing the obligations contained in restrictive covenant agreements.

## IV.     CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court issue a Temporary Restraining Order in the form filed herewith pursuant to Federal Rule of Civil Procedure 65(b) and, after notice and a hearing, a Preliminary Injunction in the form filed herewith pursuant to Federal Rule of Civil Procedure 65(a) to provide the relief set forth in this Motion. Finally, the parties Agreement provides that "Employee agrees that Employer shall not be required to file any bond in connection with any such request for injunctive or other equitable relief" (Compl. Ex. A, ¶ 18(h)). Accordingly, Beasley respectfully requests the Court waive any bond requirement in connection with the requested relief.

Dated: September 18, 2023          Respectfully submitted,


**FISHER & PHILLIPS LLP**


By: /s/ Andrew S. Gallinaro
    Andrew S. Gallinaro (PA #201326)
    Gabrielle Giombetti (PA #321118)
    100 N. 18th Street, 12th Floor
    Philadelphia, PA 19103
    Phone: 610.230.2132
    Email: agallinaro@fisherphillips.com
           ggiombetti@fisherphillips.com

    and

    Michael Elkon (*pro hac vice pending*)
    1230 Peachtree Street, NE
    Suite 3300
    Atlanta, GA 30309
    Phone: 404.231.1400
    Email: melkon@fisherphillips.com

    **ATTORNEYS FOR PLAINTIFF**

FP 48198193.4

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEASLEY MEDIA GROUP, LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 2:23-cv-03614 |
| ANTHONY GARGANO, | : |
| and | : |
| BSN LIVE, INC. d/b/a ALLCITY NETWORK | : |
| Defendants. | : |

## [PROPOSED] INJUNCTION ORDER

This Court, having read and considered the Verified Complaint on file in this action by Plaintiff Beasley Media Group, LLC ("Beasley"), Beasley's Motion for a Temporary Restraining Order and Preliminary Injunction, and Memorandum of Law in support thereof, Defendant's Opposition (if any), and being fully advised of the premises, and good cause appearing therefore, hereby finds and orders as follows:

1. Beasley has demonstrated a likelihood of success on the merits of its breach of contract and breach of duty of loyalty claims against Defendant Anthony Gargano ("Gargano");

2. Beasley will suffer irreparable harm if Defendant Gargano is permitted to continue to violate his contractual and other legal obligations to Beasley;

3. Beasley has no adequate remedy at law;

4. Greater injury will be inflicted on Beasley by denial of injunctive relief than would be inflicted upon Defendant Gargano by the granting of such relief; and

5.     The issuance of injunctive relief will serve the public interest in the enforcement of valid contracts.

For those reasons, and in order to preserve the status quo prior to a show-cause hearing,

IT IS HEREBY ORDERED THAT:

1.     Pending the hearing on Beasley's Motion for Preliminary Injunction, Defendant Gargano is hereby RESTRAINED and ENJOINED directly or indirectly, and whether along or in concert with others, from doing any of the following:

(a)     Breaching the obligations set forth in the Gargano Agreement, and specifically from providing any services to, or for, All City and/or PHLY Sports, for the duration of his term of employment with Beasley, and for the six-month restrictive period following the expiration of his term or a termination event, whichever comes first;

(b)     Maintaining an ownership interest, if any, in All City and/or PHLY Sports for the duration of his term of employment with Beasley, and for the six-month restrictive period following the expiration of his term or a termination event, whichever comes first;

(c)     Accepting compensation of any kind from any company that is engaged in the Employer's Business within the Non-Competition Radius (as those terms are defined in Gargano Agreement) for the duration of his term of employment with Beasley, and for the six-month restrictive period following the expiration of his term or a termination event, whichever comes first.

2.     Defendant Gargano shall appear before the United States District Court for the Eastern District of Pennsylvania at _____, Pennsylvania, on the _____ day of _____, 2023, at _____ o'clock in the fore/after noon, or as soon thereafter as counsel can be heard, then

and there to show cause why a preliminary injunction should not be granted pursuant to Fed. R. Civ. P. 65, effectively extending this Order pending resolution of the parties' claims on the merits;

3.      Defendant Gargano shall file his opposition to Beasley's Motion for Preliminary Injunction, if any, on or before _____, 2023, and Beasley shall file any reply on or before _____, 2023;

4.      Service of a copy of this Temporary Restraining Order and Order to Show Cause and all related pleadings and exhibits filed with the Court in connection therewith shall be served on the Defendants in accordance with applicable law on or before _____, 2023.

Entered this _____ day of _____, 2023.


_____
UNITED STATES DISTRICT JUDGE